UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

DONNA GLAESENER,

    **Plaintiff,**

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY TRANS-HUDSON

    **Defendants.**

Civ. No. 2:20-cv-02294 (WJM)

OPINION

---

## WILLIAM J. MARTINI, U.S.D.J.:

Presently in this action alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. ¶ 2000e, *et seq.* ("Title VII"), is a motion by Defendants Port Authority Of New York And New Jersey, Port Authority Trans-Hudson ("Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 67. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, Defendants' motion for summary judgment is **granted.**

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Donna Glaesener ("Plaintiff" or "Glaesener") is an African American female who has been working at the Port Authority Trans-Hudson Corp. ("PATH") since November 12, 1996. Defs.' Statement of Material Facts ("DSMF"), ¶ 8, ECF No. 67-1. She commenced this action on March 3, 2020,[1] ECF No. 1, and filed an Amended Complaint on December 5, 2022 alleging race discrimination (Count I) and retaliation (Count II). ECF No. 54.

Defendants move for summary judgment arguing that Plaintiff has failed to establish a *prima facie* case of discrimination or retaliation and that Defendants have legitimate business reasons for their decisions. Defendants also contend that claims arising before June 15, 2018 are time barred and that any request for punitive damages must fail because Defendants are hybrid entities immune from punitive damages. In response, Plaintiff is no

---

[1] Glaesener initially filed an action on November 21, 2019 with another Plaintiff, Astagne Avril, claiming discrimination and retaliation in violation of Title VII. Plaintiffs in that case, No. 19-cv-20570 (J. Cecchi), were ordered to file a separate action with facts pertaining only to Glaesener, *see* March 2, 2020 J. Kiel Order, Declaration of Juan M. Barragan ("Barragan Decl."), Ex. D, ECF No. 68-4, which resulted in the above captioned matter.

Unless otherwise noted, all exhibits referenced herein are attached to the Barragan Decl.

1

longer pursuing claims that Defendants failed to promote her in 2016 and 2017, *see infra* n. 2, 3, and has also stipulated to the dismissal of her punitive damage claim. See Pl. Opp'n Br. at 28. Thus, the remaining issues are whether Defendants failed to promote Plaintiff to the following 4 positions in violation of Title VII:

1) *Race Discrimination*:
   - Systems Safety & Environmental Manager ("Safety Manager") in 2018 (David Volk, a white male, was selected); and
   - Chief Operations Examiner ("COE") in 2018 (Mike Moran, a white male, was selected)

2) *Retaliation*:
   - Principal Programs & Training Coordinator ("PPT Coordinator") in 2019 (Raishea Haines, a Black female, was selected)
   - Superintendent of Transportation in 2022 (Ms. Haines was selected)

For the reasons set forth below, Defendants are entitled to summary judgment on these remaining claims.

Plaintiff began at PATH in 1996 as a train conductor, then was promoted to Train Engineer in February 1997, to Acting Terminal Dispatcher in 2002, to Operations Examiner also in 2002, to Assistant Trainmaster in 2008, to Chief Safety Supervisor in 2016, and then to Acting Superintendent of Night Operations in January 2020. DSMF, ¶¶ 9-26. She has been the Superintendent of Night Operations since November 2020. *Id.* at ¶¶ 3, 27.

David Volk joined PATH's Safety Department as the Safety Programs Coordinator in 2016. *Id.* at ¶ 56. As such, he was responsible for the administration of all safety training for all PATH divisions to ensure compliance with regulatory mandated training, serving as the primary back-up for PATH's drug and alcohol coordinator, and emergency preparedness. *Id.* In 2017, after a division restructuring, Mr. Volk was promoted to Principal Safety and Training Coordinator. *Id.* at ¶¶ 57, 58, 61, 63.

On April 4, 2018, Plaintiff met with Flora Heun in Human Resources to discuss her concerns on various topics regarding her employment at PATH. *Id.* at ¶ 109. Thereafter, Ms. Heun sent an "EEO Complaint Summary," containing Plaintiff's grievances to the Office of Equal Opportunity Compliance, Diversity & Inclusion ("OCDI") on September 18, 2018. *Id.* at ¶¶ 112-113. The EEO Complaint Summary alleged that the "department was not diverse" and that Plaintiff suffered race-based discrimination.[2] EEO Compl., Ex. II, ECF No. 69-9.

---

[2] Plaintiff alleges that in November 2016, the role of System Safety Investigator was offered to her on less favorable terms than offered to Bradley Neggers, a Caucasian male, who accepted the job after Plaintiff declined it. Defendants dispute that Plaintiff was offered different terms and insist she turned down the job due to salary expectations.

2

In June 2018, Louis Dulfer, a white male who was Safety Manager since 2016, announced his intention to retire from PATH. *Id.* at ¶ 66. According to Mr. Dulfer, when Plaintiff expressed her interest in the position, he had already identified Mr. Volk as one of two people whom he decided to mentor as he believed they would be the best fit to replace him; the other possible candidate, Marco Salcedo, was to be deployed to active military duty. *Id.* at ¶¶ 68-69, 73-74. Mr. Dulfer emailed Michael Marino, the then director of PATH, that Mr. Volk was an "outstanding" performer in 2017 and 2018, that he had "formed strong working relations with department and division staff as well as both senior management and represented staff," was "seen as the go to person" in Mr. Dulfer's absence, and that his "demonstrated managerial skills have been as asset to the Safety Division and PATH." Aug. 17, 2018 E-mail, Ex. X, ECF No. 68-24. On about September 17, 2018, Mr. Volk was appointed as Safety Manager. *Id.* at ¶ 78.

PATH posted a vacancy for the COE role on July 23, 2018. DSMF, ¶ 82; *see* Job Posting, Ex. AA, ECF No. 69-1. Plaintiff applied for the position and was one of four candidates invited to interview; the other three were Monica Lam, Shawn Greene, and Michael Moran. DSMF, ¶ 86. Plaintiff's interview was conducted by then PATH Superintendent of Transportation, Kevin Lejda, and the recruiter for the COE position, Ben Lau. *Id.* at ¶ 89. The interviewers were given a question sheet, instructions, a script to follow at certain parts of the interview, as well as forms to rate from one to five each candidate's communication skills and response to each question. *Id.* at ¶¶ 90-92. The interview scores were: Plaintiff - 24, Ms. Lam - 25, Mr. Greene - 22, and Mr. Moran - 27. *Id.* at ¶ 96. Mr. Moran was selected to be COE on or about October 15, 2018. Score Sheet, Ex. BB, ECF No. 69-2.

On or about October 9, 2018, Plaintiff complained to OCDI about Mr. Volk's promotion. *Id.* at ¶¶ 121-122. Upon investigating, the OCDI concluded that there had been no discriminatory or retaliatory practices by PATH in violation of Title VII or employer employment policies. OCDI Investigation Memorandum, Ex. Z, ECF No. 68-26.

Shortly thereafter, on December 6, 2018, PATH posted the PPT Coordinator position for which Plaintiff was one of three candidates invited to interview. DSMF, ¶¶ 126, 130. The other two were Wendy Wright and Ms. Haines, both African American females. *Id.* at ¶¶ 130-131. The interviewers were given a sheet of questions specifically tailored for the PPT Coordinator position, instructions, a script to follow at certain parts of the interview, as well as forms to rate from one to five each candidate's communication skills and response to each of the ten questions. *Id.* at ¶¶ 132-137. Plaintiff scored 41; Ms. Haines – 42.75; Ms. Wright – 29. Score Sheet, Ex. MM, ECF No. 69-13. Ms. Haines was selected as PPT Coordinator. DSMF, ¶ 145. On February 15, 2019, Mr. Lau sent Plaintiff an email advising her that she had not been selected for the job. *Id.* at ¶ 140.

3

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2018, alleging that Defendant engaged in discriminatory and retaliatory hiring practices.[3] *See* EEOC Charge, Ex. A, ECF No. 68-1.

On January 16, 2020, PATH posted the Superintendent of Night Operations vacancy. DSMF, ¶ 155. Plaintiff was one of four candidates invited to interview for the position. Again, interviewers were given a sheet of questions, instructions, a script to follow at certain parts of the interview, as well as forms to rate from one to five each candidate's communication skills and response to each of the questions. *Id.* at ¶¶ 159-165. Plaintiff received the highest score – 26. Other candidates scored as follows: Dan Weland, 22; Brandan McCann, 21; and Suleiman Muhammad, 17. Score Sheet, Ex. CCC, ECF No. 70-3. In November 2020, after the present action had been filed against Defendants, Plaintiff received the promotion to Superintendent of Night Operations, which is a senior management position with PATH. DSMF, ¶167-169.

On April 28, 2022, PATH posted an opening for the <u>Superintendent of Transportation</u>. *Id.* at ¶ 170. Plaintiff was one of four applicants invited to interview for the position. The other three were Ms. Haines, Shawn Greene, and Dominick Lombardi. *Id.* at ¶ 172. The interviewers were provided with a sheet of questions specifically tailored for the position, a script to follow at certain parts of the interview, as well as forms to rate each candidate. *Id.* at ¶¶ 174-175. Plaintiff received an interview score of 18, Mr. Green – 18, Mr. Lombardi – 20, and Ms. Haines – 44. Score Sheet, Ex. TT, ECF No. 69-20. Plaintiff was notified on September 27, 2022 that she was not selected to be Superintendent of Transportation. Amended Compl., ¶ 48.

## II.   STANDARD AND BURDEN OF PROOF

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and

---

[3] The EEOC Complaint charges Defendants with violations of Title VII: 1) in February 2017, the System Safety Investigator position was offered to Mr. Neggers on more favorable terms, *see supra* n.2; 2) in July 2017, Mr. Volk was appointed to be Principal Safety and Training Coordinator; 3) on October 5, 2018, Mr. Volk was appointed as Acting Safety Manager; and 4) on October 16, 2018, Mr. Moran was selected to be COE over her in retaliation for requesting an investigation into alleged discriminatory hiring practices. As noted earlier, Plaintiff is no longer pursuing claims of discrimination based on events that occurred in 2016 or 2017, namely the System Safety Investigator as well as the Principal Safety and Training Coordinator positions. *See* Pl. Opp'n Br. at 6, n.2; *supra,* n.2.

4

determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. *McDonnell Douglas* Burden Shifting Framework

Title VII prohibits employment discrimination on the basis of race, color, or sex, among other grounds. 42 U.S.C. § 2000e–2(a)(1). Under Title VII, in the absence of direct evidence of retaliation, discrimination claims based on circumstantial evidence are determined under the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). The plaintiff carries the initial burden of establishing a *prima facie* claim, which the defendant may rebut by showing some legitimate, non-discriminatory reason for the adverse action. *Id.*; *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254, (1981). If the employer meets this "relatively light burden," *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), a plaintiff then must prove that the employer's given reason was pretext for discrimination. *Jones*, 198 F.3d at 413.

To show pretext and avoid summary judgment, a plaintiff must identify "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citations omitted). Discrediting the employer's proffered reason requires more than simply showing that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765 (citations omitted). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies,

5

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* (alteration in original) (citations omitted).

Despite the shifting burdens of production, the plaintiff retains the burden of persuasion at all times by a preponderance of the evidence. *Burdine*, 450 U.S. at 253. Claims of failure-to-promote based on race "are analyzed under the well known burden-shifting" *McDonnell Douglas* framework. *Young v. Pennsauken Twp. Sch. Dist.*, 47 F. App'x 160, 161 (3d Cir. 2002). This framework also applies to claims of retaliation under Title VII. *See Waddell v. Small Tube Prod.*, 799 F.2d 69, 73 (3d Cir. 1986).

### B. Race Discrimination under Title VII

Under *McDonnell Douglas*, a plaintiff must first make out a *prima facie* case of discrimination by showing: (1) she is a member of a protected class; (2) she sought and was qualified for the promotion; (3) she was rejected for the promotion; and (4) the adverse employment action must have occurred "under circumstances that give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, n.6. An event that may create an inference of unlawful discrimination is if the employer treats a plaintiff less favorably than similarly situated employees outside his protected class. *Jones*, 198 F.3d at 413 (citations omitted); *see Young*, 47 Fed. Appx. at 161.

There is no dispute that Plaintiff is a member of a protected class and that she was not promoted to Safety Manager or COE. But even if Plaintiff has made a *prima facie* case of discrimination, she fails to proffer sufficient evidence to show that Defendants' legitimate, non-discriminatory reasons for their promotion decisions were pretextual.

#### 1. Systems Safety & Environmental Manager

Plaintiff fails to identify any evidence that shows that Plaintiff was not promoted to Safety Manager due to race-based discrimination.[4] At the outset, the employers' policies did not require "that every position be filled by a competitive process. A department director has the discretion to fill a position through either a competitive process or use of a

---

[4] Plaintiff contends she should have been promoted to Principal Safety and Training Coordinator, which then would have given her the opportunity to shadow Mr. Dulfer and acquire additional skills to be promoted to Safety Manager in 2018. However, as Plaintiff is no longer pursuing a discrimination claim regarding the 2017 Principal Safety and Training Coordinator position, *see supra* n.3, the Court need not address that claim. Nevertheless, given Plaintiff's attempt to link those promotions, the Court notes that even if Plaintiff was qualified for the promotion, she does not know who else was interested in the Principal Safety and Training Coordinator position in 2017. Pl. Dep., 85:5-6, Ex. L, ECF No. 68-12. The fact that a single Caucasian was promoted does not necessarily create an inference of discrimination. *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) (finding "evidence of differential treatment of a single member of the non-protected class is insufficient to give rise to an inference of discrimination." (internal quotations and citation omitted)).

direct departmental option ["DDO"]."[5] Feb. 7, 2019 Investigation Close Out, Ex. Z at PA7406, ECF No. 68-26. Between 2017 and January 2020, DDO was used 344 times, of which a non-Caucasian was promoted 153 times. Christopher Wolff Aff. at ¶¶ 7-8, Ex. 1, ECF No. 74-3. Among the 153 promoted, 47 were African American. *Id.* at ¶ 9. Within PATH, the DDO was used 14 times during that period and 7 of those were non-Caucasian employees. *Id.* at ¶¶ 10-11.

Even if Plaintiff could establish a *prima facie* case, Defendants present sufficient evidence of a legitimate non-discriminatory reason for promoting Mr. Volk to that role over Plaintiff. The undisputed evidence clearly demonstrates that any requisite experience Plaintiff possessed in safety training and compliance was less than that of Mr. Volk. Mr. Dulfer testified that he believed Plaintiff was "not ready" and did not have the skill set to replace him as Safety Manager because she had limited interaction with regulators and "no managerial experience from the standpoint of developing budget, capital programs, no experience with direct employees," all of which are required for the Safety Manager position. Dulfer Dep., 44:16-22, Ex. W, ECF No. 68-23. Plaintiff had not developed or implemented any safety compliance or emergency management programs at PATH. *See* Pl. Dep., 62:20-25, 64:17-21. In addition, by the time Mr. Dulfer had decided to groom Mr. Volk in mid-2018, Plaintiff had been Chief Safety Supervisor since only 2016; that was the first role she had where her primary task expanded from oversight of train operation to safety training and compliance. *See* Pl. CV, Ex. C, Weintraub Cert., ECF No. 71-3.

In contrast, Mr. Volk, as director/chief of the City of Perth Amboy Fire Department from 2009 to 2013, had extensive background in safety training and compliance as well as experience in developing budgets and capital programs, managing employees, and dealing with regulatory agencies such as OSHA and NIOSH. Volk CV, Ex. V, ECF No. 68-22. He oversaw a $7 million operating budget and a $2 million capital budget, and also managed 50 career employees, 55 volunteers, and 35 EMS employees. *Id.* Moreover, Mr. Dulfer described Mr. Volk as, among other things, an "outstanding" performer and the "go to person" in Mr. Dulfer's absence. Aug. 17, 2018 E-mail at PA7526. Plaintiff does not dispute that as Principal Safety and Training Coordinator, Mr. Volk gained experience that better prepared him to assume the Safety Manager role. Dulfer Dep., 62:8-13; 63:14-64:19. Thus, Defendants have presented sufficient evidence of a legitimate non-discriminatory reason for promoting Mr. Volk. *See e.g., Shahin v. Delaware*, 531 Fed. Appx. 200, 203 (3d Cir. 2013) (holding plaintiff's lack of desirable experience relative to hired candidates was legitimate, non-discriminatory reason for not hiring plaintiff); *Nelson v. Borgata Hotel Casino & Spa*, 05-5705, 2007 WL 2121643, at *6 (D.N.J. July 23, 2007) (finding that employer rebutted prima facie discrimination by showing that plaintiff "was not as experienced with modern equipment and technology as the individuals that [the defendant] chose to hire.").

---

[5] The direct departmental option permits a director or hiring manager to fill a vacancy with a qualified candidate from within his/her department. HRP 3.06 at 2, Ex. P, ECF No. 68-16.

7

To show pretext, Plaintiff highlights that Mr. Volk had only been with the Safety Division since 2016 and concludes that she, as a 22-year veteran of PATH, was equally, if not more qualified than Mr. Volk to be groomed to become Safety Manager. However, Plaintiff ignores Mr. Volk's employment history prior to the PATH. Indeed, an employee's duration of employment does not automatically mean that that employee is the most qualified. Clarelle DeGraffe, who is an African American female Director and General Manager of PATH, which is the highest position at PATH, testified that promotions for a management position are based on qualifications and not how long the employee has been at PATH. DeGraffe Dep., 173:23-22, Ex. ZZ, ECF No. 69-26. In any event, even if Defendants' decision to promote Mr. Volk was wrong or mistaken, Plaintiff has offered no credible evidence upon which a jury could conclude that Defendants' legitimate non-discriminatory reasons for promoting Mr. Volk to Safety Manager were pretext for racial animus.

### 2. *Chief Operations Examiner*

Because Plaintiff was among the candidates interviewed for the COE role, Plaintiff has met her *prima facie* burden to demonstrate that she was qualified for COE consideration. *See Evans v. Port Auth. of New York & New Jersey*, 438 Fed. App'x 117, 119 (3d Cir. 2011) (reiterating that plaintiff meets burden of *prima facie* case by showing that he "was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made") (internal quotation marks and citation omitted)).

However, Defendants have articulated a legitimate, nondiscriminatory reason for promoting Mr. Moran to the COE role over Plaintiff: Mr. Moran, not Plaintiff, had the highest interview score (27) and was the most qualified candidate. Out of the four candidates invited to interview for the position, Plaintiff's score was three points lower than the highest score and in fact, was the second lowest. Poor interview performance is a legitimate non-discriminatory reason for failure to promote. *See e.g., id.* (affirming summary judgment where plaintiff received next-to-lowest interview rating and plaintiff failed to show proffered reason for failure to promote was pretextual); *Alcantara v. Aerotek, Inc.*, 765 F. App'x 692, 697 (3d Cir. 2019) (finding plaintiff's poor performance during interview and month-long working interview was legitimate non-discriminatory reason).

Next, Plaintiff insists that Defendant's proffered reason was pretext for discrimination because 1) she was significantly more qualified than Mr. Moran for the role of COE; 2) subjective interview scoring is susceptible to abuse and serves to mask discriminatory animus; and 3) Mr. Lejda, the hiring manager, had discretion to promote her because the score difference between her and Mr. Moran was only three points. These contentions lack merit.

8

First, the COE position required "5 years' experience as an Operations Examiner in PATH or a combination of experience including Dispatcher/Tower/Engineer totaling 10 years and/or 5 years of Supervisory experience." *See* COE Job Post, Ex. AA, ECF No. 69-1. When Mr. Moran applied for the position, he had been an Operations Examiner for about 14 years. Moran CV, Ex. FF, ECF No. 69-6. While Plaintiff does not dispute that Mr. Moran met the minim qualifications, Pl. Dep., 132:8-9, she maintains she was more qualified because Plaintiff has a bachelor's and master's degrees while Mr. Moran does not. Those degrees, however, were not job requirements. *See* COE Job Post. Additionally, although the resume and experience were "essential" to getting an interview, the interview itself was the "main determining factor" of selecting the COE. Lau Dep., 35:22-36:4, Ex. EE, ECF No. 69-5. Under the *McDonnell Douglas* test, courts are not to "second guess the method an employer uses to evaluate its employees." *Thompson v. Bridgeton Bd. of Educ.*, 613 Fed. App'x 105, 108 (3d Cir. 2015) (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005)).

Second, while a subjective process could be susceptible to abuse, an interview process is always subjective so that alone cannot be the criteria for determining whether it is pretext for discrimination. *See Williams v. Rohm & Haas Co.*, 90 F. App'x 627, 629 (3d Cir. 2004) (agreeing that use of subjective criteria alone did not establish pretext, and that plaintiff failed to identify "some other evidence" from which reasonable juror could consider subjective criteria to be mask for discrimination"); *Boykins v. SEPTA*, 722 F. App'x 148, 155 (3d Cir. 2018) (rejecting plaintiff's assertion of pretext where plaintiff did not point to evidence that suggested "scoring was influenced by prejudice and 'belief alone is insufficient to raise an issue of material fact.'" (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 996 (3d Cir. 1997)). There is no evidence here of manipulation or abuse in the selection process or any basis for a reasonable juror to conclude that the decision to hire the highest scoring candidate to COE, even if discretionary, was pretext for discrimination. In fact, Plaintiff sent Mr. Lau an email affirming that Mr. Moran was a "great choice" for COE. Oct. 15, 2018 Email, Ex. GG, ECF No. 69-7.

C. Retaliation

Title VII prohibits an employer from discriminating against an employee who "opposed any ... unlawful employment practice" or if "he has made a charge ... or participated in any manner in an investigation ...." 42 U.S.C. § 2000e–3(a). To sustain a *prima facie* retaliation claim, a plaintiff must show: "(1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the employer's adverse action." *Jones v. Southeastern Pennsylvania Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015) (citation and quotation marks omitted).

As to the causation requirement, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). When examining evidence of

9

causation on summary judgment, the Court should look to "evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). One evidentiary basis from which causal inference can be drawn is "unusually suggestive" temporal proximity between the protected activity and the adverse employment action. *See id.* at 280. For "mere temporal proximity" to suggest such causality "the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). "The adverse action must occur within days, not months, of the protected activity." *Mercer v. SEPTA*, 608 Fed. Appx. 60, 65 (3d Cir. 2015). A causal link may also be substantiated by evidence of ongoing antagonism following the protected conduct or the employer giving inconsistent reasons for a particular adverse employment action.[6] *Farrell*, 206 F.3d at 280–81. But these are only some kinds of evidence that may be sufficient, and the Court must consider all possible probative evidence. *Id.* at 281.

### 1. *Principal Programs and Training Coordinator*

Assuming Plaintiff can establish the first two factors of a *prima facie* retaliation case, she proffers no evidence of causation. The temporal proximity between any protected employee activity and adverse employer decision is by itself insufficient to show causation. Plaintiff complained about discrimination arguably as early as April 2018 and filed an EEOC Discrimination Charge in December 2018. In February 2019, Plaintiff was denied the position of PPT Coordinator. The two to ten-month lapse between Plaintiff's protected activity and the alleged adverse employer action is not an "unusually suggestive" temporal proximity that alone creates an inference of a causal link. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (noting cases in which two to ten days of temporal proximity have supported inference of causal connection, but finding two-month lapse was "not unduly suggestive temporal relationship" where plaintiff failed to proffer any other evidence of retaliation), *superseded by statute on other grounds*; *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) ("An inference of "unduly suggestive" temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action."); *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (finding no "unduly suggestive temporal proximity" when three months passed between an employee's protected activity and the adverse action). Plaintiff makes no allegations or submits any evidence of any ongoing antagonism following her complaints of discrimination. Setting aside whether the hiring manager even knew of Plaintiff's grievances, Plaintiff fails to identify any evidence that

---

[6] "Although an examination of the employer's proffered legitimate reason for the adverse action is frequently delayed until the second and third parts of the familiar *McDonnell Douglas* burden-shifting framework in pretext cases, 'evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other.'" *LeBoon*, 503 F.3d at 234, n.10 (citing *Farrell*, 206 F.3d at 286)).

10

credibly supports any but-for causation underlying the decision not to select her as PPT Coordinator.

Even if Plaintiff could establish causation to meet her *prima facie* burden, Defendants offer a legitimate non-discriminatory reason for hiring Ms. Haines over Plaintiff. Among the three candidates interviewed, Ms. Haines had the highest score. The scores were based on retaliation-neutral questions relating to general competency, technical knowledge, and oral communication skills. Interview Question Sheet, Ex. OO, ECF No. 69-15.

To establish pretext, Plaintiff argues that Ms. Haines did not engage in protected activity, had less seniority and experience, and was a less qualified candidate. Such contentions are without merit. Plaintiff's theory that Ms. Haines received the promotion because she had not engaged in protected activity is pure speculation as it lacks *any* factual basis. Next, Plaintiff insists Ms. Haines lacked the requisite experience and seniority for the role and was ineligible for a band-to-band[7] promotion. The coordinator role required five years of supervisory experience and three years of regulatory compliance with "FRA/OSHA/EPA/NFPA." Principal Programs & Training Coordinator Job Post, Ex. LL, ECF No. 69-12; *see also* DSMF, ¶ 148-150 (indicating that required experience with regulatory compliance was disjunctive rather than conjunctive). Ms. Haines met the supervisory requirement in her job as Operations Examiner from 2010 to 2014 and as Assistant Trainmaster from June 2014 to at least May 2018. Hanes Dep., 16:3-24, 34:5-7, Ex. XX, ECF No. 69-24; Ex. YY, ECF No. 69-25. Ms. Haines also satisfied the regulatory compliance requirement because she had experience with FRA regulations as an Operations Examiner from 2010 to 2014. Hanes Dep., 34:8-35:3. Finally, the head of PATH, Mr. Marino, authorized the requisite override to allow Ms. Haines to interview for a "band to band" promotion. Lau Dep., 165:15-166:1, Ex. EE, ECF No. 69-5. Thus, Ms. Haines did meet the minimum requirements for the position. That Mr. Volk may have had the discretion to select a candidate that scored lower than the top-rated candidate but did not do so is not evidence of pretext. Moreover, as discussed earlier, Plaintiff's emphasis on seniority is misplaced. Although Plaintiff believes that "longevity at PATH" should be maybe 80% of the consideration in determining a promotion, *see* Pl. Dep., 222:3-19, the key component to a management position is the qualification of the candidate as determined by an interview panel. DeGraffe Dep., 174:7-22. In short, there are no facts that support Plaintiff's position that Defendants' legitimate non-discriminatory reason for hiring Ms. Haines was pretext for retaliation.

---

[7] All "non-represented positions" are classified on a banding scale that organizes job titles based on "responsibilities, complexity, and impact." DMSF, ¶ 41. For band-to-band promotions, an employee must be in their current position for at least 12 months prior to being promoted to another position in another band. *Id.* at ¶ 44. However, the time and role requirements for band-to-band promotions can be overridden by the chief or director of a given department based on operational need. *Id.* at ¶ 45.

11

### 2. *Superintendent of Transportation*

Plaintiff posits that there is temporal proximity to satisfy the causation element of her *prima facie* burden despite the years-long time gap between Plaintiff's discrimination charges (the EEO charge in April 2018, the EEOC charge in December 2018, and the initial discrimination lawsuit in November 2019) and her September 2022 interview for the Superintendent of Transportation position. Plaintiff contends that each deposition of Defendants' employees in this ongoing litigation is a "continuum of protected conduct" that establishes temporal proximity but provides no caselaw to support that position. Nor is there evidence of any pattern of antagonism or any credible evidence sufficient for a reasonable juror to infer causality between any protected activity and the failure to promote Plaintiff to Superintendent of Transportation years later, particularly in view of her promotion to Superintendent of Night Operations in November 2020 after she had filed her discrimination claims.

Even if a reasonable jury could infer a causal connection, Defendants offer a legitimate non-discriminatory reason for its hiring decision. Plaintiff's interview score of 18 was 26 points lower than Ms. Haines' score of 44 and was in fact tied for lowest among the four interviewees. Plaintiff's interview did not go well. For example, one of the interviewers, Cynthia Bacon, described the interview as having been "very challenged unfortunate," that Plaintiff was "very flustered," "emotional," "there were tears," and that Plaintiff "slapped the table a few times out of maybe frustration." Bacon Dep., 45:4-15, Ex. VV, ECF No. 69-22. Evelyn Perez, another interviewer, wrote in her notes that Plaintiff's answers often "lack[ed] cohesion and organization." Perez Interview Rating Form at PA7993, Ex. UU, ECF No. 69-22. Interviewer notes and deposition testimony regarding Plaintiff's interview for Superintendent of Transportation show that she was denied for specific reasons unrelated to retaliation.

Nevertheless, Plaintiff contends that the interview notes reveal inconsistencies that evidence pretext. For instance, one of the interviewers, Joseph Vartalone, rated one of Plaintiff's responses as "Needs Development" for failing to break down the process of onboarding in 30, 60, and 90 days, but rated Ms. Haines' response "Outstanding." Although Ms. Haines' response is not fully documented in the interviewer's notes, there is no inconsistency. Both Mr. Vartolone and Ms. Perez gave deposition testimony that Ms. Haines did in fact break down the process. Vartolone Dep., 70:10-21, Ex. WW, ECF No. 69-23; Perez Dep., 81:18-25, Ex. AAA, ECF No. 70-1. Next, when candidates were prompted to "discuss various management styles required, the purpose for them and the desired outcomes," Ms. Bacon rated Ms. Haines' response as "Outstanding" because Ms. Haines discussed various management styles. Interview Questions and Rating Form at PA7962; *see also* Bacon Dep., 50:14-51:3. In contrast, Ms. Bacon rated Plaintiff's response as "Needs Development," Interview Questions and Rating Form at PA7995, Ex. NNN, ECF No. 70-14, because Plaintiff's response was to list "job progression" rather than discuss "style or accomplishments," Bacon Dep., 23:4-12. More notably, Plaintiff

12

displayed a "very challenged communications style" and lacked a "cohesive response to the question," *id.* at 24:17-25. The notes, scoring, and deposition testimony are consistent with Defendants' nonretaliatory explanation that Plaintiff did not interview as well as Ms. Haines. *See e.g., Carr v. New Jersey*, 543 Fed. Appx. 149, 152 (3d Cir. 2013). That the interview notes on these and other questions may not completely document the details of each candidate's every response do not amount to inconsistencies that substantiate a causal link or show that Defendant's proffered reasons for not promoting Plaintiff to Superintendent of Transportation are weak, implausible, or so inconsistent to be unworthy of credence.

In sum, Plaintiff has failed to present evidence that would permit a reasonable jury to find that Defendants were motivated by retaliatory animus when they promoted Ms. Haines to PPT Coordinator and to Superintendent of Transportation or that any articulated legitimate reasons were pretext. Defendants' motion for summary judgment on the retaliation claims is **granted.**

## IV.    CONCLUSION

Making all reasonable inferences in the nonmoving party's favor, Plaintiff has not met her burden to show that there are any genuine issues of material facts upon which a reasonable jury could find that Defendants discriminated against her based on her race or retaliated against her in violation of Title VII. Defendants' motion for summary judgment is **granted.**

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: November 30, 2023

13